IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT E. WALLS,                          )
                                          )
                    Petitioner,           )
                                          )
        vs.                               )        Civil Action No. 06-1598
                                          )
                                          )        Judge Terrence F. McVerry
THE ATTORNEY GENERAL OF THE               )        Magistrate Judge Amy R. Hay
STATE OF PENNSYLVANIA                      )
                                          )
                    Respondents.          )


REPORT AND RECOMMENDATION

RECOMMENDATION

It is respectfully recommended that the Petition for a Writ of Habeas Corpus be denied.  It

is further recommended that a certificate of appealability also be denied.

REPORT

Petitioner, Robert E. Walls, brings this habeas corpus petition pursuant to 28 U.S.C. §

2254, complaining that the Pennsylvania Board of Probation and Parole ("Board") improperly

refused his applications for release on parole in violation of unspecified constitutional rights.  For

the reasons set forth below, the petition should be denied.

**Relevant Facts and Procedural History**

Petitioner is serving a term of imprisonment of ten (10) to twenty (20) years for his

convictions of statutory rape and involuntary deviate sexual intercourse, which convictions were

obtained in the Court of Common Pleas of Westmoreland County.  After the expiration of his

minimum sentence on May 11, 2000, Petitioner was eligible for parole under Pennsylvania law.[1]

Previously, Petitioner filed another habeas corpus petition in Walls v. Desuta, No. 04-cv-1103 (W.D. Pa. filed July 26, 2004).[2]  In that habeas petition filed against the Board, Petitioner raised some claims similar to the claims he now raises herein.   In Walls v. Desuta, the court issued a report and recommendation on June 21, 2005, recommending denial of the petition.  On July 25, 2005, the District Court Judge adopted the report and the case was closed in the District Court as of that date.  Subsequently, the Court of Appeals denied a certificate of appealability in that case on November 8, 2005.

In the present case, Petitioner is proceeding pro se and in forma pauperis.  Because he is incarcerated, he is deemed, pursuant to the prisoner mail box rule, to have filed his present habeas petition, at the earliest, on November 17, 2006, the date whereon he signed his IFP application.[3]  In that habeas petition, he raises the following four issues:

> They say that I have not done the sex offenders class [but I did, in fact complete the class].

---

[1] See 61 Pa. Stat. §331.21.

[2] Actually, Petitioner had erroneously filed the petition in the United States District Court for the Eastern District of Pennsylvania and that Court transferred the case to this court.  The case was filed in the Eastern District on June 15, 2004.

[3] The so called "prisoner mail box rule" provides that "a pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court."  Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998); United States v. Soto, 159 F.Supp.2d 39, 45 (E.D. Pa. 2001).  Absent proof of the exact date of delivering the IFP application/habeas petition to the prison authorities, the court will treat November 17, 2006, the date whereon Petitioner signed his IFP application, as the filing date.  See Cromwell v. King, 27 Fed.Appx. 13, 14 (2d Cir. 2001)("In the absence of other evidence regarding the date on which Cromwell's petition was handed to prison officials for mailing, we consider his petition to have been filed on September 2, 1997, the date on which petitioner signed his in forma pauperis application. See Rhodes v. Senkowski, 82 F.Supp.2d 160, 165 (S.D.N.Y.2000) (collecting cases).");  Henshaw v. Commissioner, Dept. of Correction, No. 99-848-SLR, 2000 WL 777868 (D. Del. June 8, 2000).

[Dkt. [3] at 5, Ground One]

> [The Board states in its denial of parole that]  I need to participate in and comlete [sic] additional institution programs [but] I have done additional programs, like "drug and alcohol" program[s], and [a] self awareness program [called] "hope and recovery" . . .

[Dkt. [3] at 6, Ground Two]

> [The Board or the Department of Corrections] state[s] that I am not suppose to look at magazines that have women in bikini or in the nude, it's DOC Policy. . . They say sex offender[s] are not allow[ed] to look at these magazine[s].  I look[ed] up this policy and it dose [sic] not say anything about sex offender[s] could not look at these magazine[s].

[Dkt. [3] at 8, Ground Three].

> When I got my parole decision back it did not come with a[n] appeal [form]. . . . when you get your parole decision back, it's suppose to come with a[n] appeal but they don't.

[Dkt. [3] at 10, Ground Four].

The Attorney General's Office filed an answer on behalf of the Board.  Dkt. [5]. Petitioner filed a traverse, Dkt. [7], and a supplemental traverse, Dkt. [9].  In addition, he filed exhibits in support,  Dkt. [12], which were copies of the Board's decisions denying Petitioner parole, dated March 3, 2000, March 1, 2002, and July 31, 2006.

**Discussion**

Petitioner does not make clear which parole denials he is attacking herein.  It appears that he has been denied parole seven times by the Board, to wit, on March 3, 2000, May 10, 2001, March 1, 2002, August 17, 2003, February 14, 2004, February 24, 2005 and July 31, 2006.  The Court finds that only the July 31, 2006 denial is cognizable in the instant petition for two reasons. First, the present petition is time barred under AEDPA with respect to all of the parole denials

except the most recent one, i.e., July 31, 2006, insofar as Petitioner's present petition was not filed until November 17, 2006 more than a year after all of the denials save the July 31, 2006 denial. See, e.g., McAleese v. Brennan, 483 F.3d 206 (3d Cir. 2007)(applying AEDPA's statute of limitations to parole denial and measuring the running of the limitations period from the date of the parole denial under 28 U.S.C. § 2244(d)(1)(D), finding that the date of parole being denied was the date of the factual predicate).

Second, even if not time barred, this court does not have subject matter jurisdiction to consider any of the parole denials save the July 31, 2006 and possibly the  February 24, 2005 denial, because with respect to the earlier denials, the present petition constitutes a second or successive petition in light of the first habeas petition filed in Walls v. Desuta, No. 04-cv-1103 (W.D. Pa. filed July 26, 2004).  See Benchoff v. Colleran, 404 F.3d 812 (3d Cir. 2005) (holding that where a habeas petitioner "knew of all of the facts necessary to raise his [parole] claim before he filed his initial federal habeas petition" and he failed to raise those claims in the first federal habeas petition, then his attempt to raise them in a second habeas petition runs afoul of AEDPA's bar on second or successive petitions).   Here, Petitioner knew all of the facts necessary to raise his parole claims with respect to the denials of parole occurring on May 10, 2001, March 1, 2002, August 17, 2003, and February 14, 2004, prior to his filing of the first habeas petition in Walls v. Desuta, hence, the present petition is second or successive as to those parole denials.   Although it was possible that Petitioner could have amended his first habeas petition filed in Walls v. Desuta to have included the parole denial of  February 24, 2005 in his challenge, and hence, we could hold that the present petition is second or successive as to that parole denial as well, such a holding would be an extension of the holding in Benchoff v. Colleran, and, perhaps, an unwarranted one.

4

Hence, the court will not rely on this rationale to bar a challenge to the February 24, 2005 denial

and instead relies solely on the fact that any challenge to the February 24, 2005 denial is time

barred.

Accordingly, the only parole challenge cognizable herein is the challenge to the parole

denial occurring on July 31, 2006.  In that denial, the Parole Board gave the following reasons for

finding Petitioner should not be paroled:

> FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE,
> AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO
> THE PAROLE ACT, THE BOARD OF PROBATION AND PAROLE, IN THE
> EXERCISE OF ITS DISCRETION, HAS DETERMINED THAT: YOUR BEST
> INTERESTS DO NO JUSTIFY OR REQUIRE YOU BEING
> PAROLED/REPAROLED; AND, THE INTERESTS OF THE
> COMMONWEALTH WILL BE INJURED IF YOU WERE
> PAROLED/REPAROLED.  THEREFORE, YOU ARE REFUSED
> PAROLE/REPAROLE AT THIS TIME.  THE REASONS FOR THE BOARD'S
> DECISION INCLUDE THE FOLLOWING:
> THE NEGATIVE RECOMMENDATION MADE BY THE DEPARTMENT OF
> CORRECTIONS.
> REPORTS, EVALUATIONS AND ASSESSMENTS CONCERNING YOUR
> MENTAL AND BEHAVIOR CONDITION AND HISTORY THAT REFLECTS
> ONGOING RISK TO THE COMMUNITY.
> YOUR NEED TO PARTICIPATE IN AND COMPLETE ADDITIONAL
> INSTITUTIONAL PROGRAMS.
> YOU WILL BE REVIEWED IN OR AFTER AUGUST, 2007.
> AT YOUR NEXT INTERVIEW, THE BOARD WILL REVIEW YOUR FILE
> AND CONSIDER:
> WHETHER YOU HAVE SUCCESSFULLY COMPLETED A TREATMENT
> PROGRAM FOR SEX OFFENDERS.
> WHETHER YOU HAVE RECEIVED A FAVORABLE RECOMMENDATION
> FOR PAROLE FROM THE DEPARTMENT OF CORRECTIONS.
> WHETHER YOU HAVE MAINTAINED A CLEAR CONDUCT RECORD AND
> COMPLETED THE DEPARTMENT OF CORRECTIONS' PRESCRIPTIVE
> PROGRAM(S).
> YOUR EFFORTS TO SECURE AN APPROVED HOME PLAN WILL BE
> SUBMITTED TO THE BOARD AT THE TIME OF REVIEW.

Dkt. [5-2] at 6 to 7.

Petitioner does not make clear what Constitutional right he believes is violated by the Parole Board's denial of parole to him.  However, the crux of his argument is that the Board's repeated denial of parole is fundamentally unfair to him.  The Court understands such an argument to be that the Board is violating his substantive due process rights as guaranteed by the Fourteenth Amendment.  See, e.g., Riggins v. Nevada, 504 U.S. 127, 149 (1992)("We have said that 'the Due Process Clause guarantees the fundamental elements of fairness. . . .'"); Lisenba v. California, 314 U.S. 219, 236 (1941) ("The aim of the requirement of due process is . . . to prevent fundamental unfairness");  Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985)("In order to prevail on a claim that an . . . error deprived the defendant of due process under the Fourteenth Amendment he must show that the error was so pervasive as to have denied him a fundamentally fair trial").

Substantive due process "is an area of the law famous for its controversy, and not known for its simplicity."  Woodwind Estates Ltd. v. Gretkowski, 205 F.3d 118, 122 (3d Cir. 2000).  In contrast to procedural due process' focus on procedures, substantive due process prohibits certain government actions irrespective of the procedures which attend those actions.  Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 399 (3d Cir. 2000) ("The substantive component of the Due Process Clause limits what governments may do regardless of the fairness of procedures that it employs, and covers government conduct in both legislative and executive capacities.").  Whereas procedural due process concerns deprivations of liberty interests and assures that such deprivations are not accomplished unless attended by certain procedures, substantive due process does not require a liberty interest in order to be violated.  Block v. Potter, 631 F.2d 233, 236 (3d Cir. 1980)(holding that denial of parole based on considerations of race may state a claim for

6

violation of substantive due process even though there is no liberty interest in parole);[4] Pittsley v. Warish, 927 F.2d 3, 6 (1st Cir. 1991)(under one theory of substantive due process "it is not required that the plaintiffs prove a violation of a specific liberty or property interest") (citing, Rochin v. California, 342 U.S. 165 at 172, 173 (1952)).

The standards for analyzing a substantive due process claim appear to depend upon whether one is challenging legislative or executive action.  See, e.g., Wagner ex rel. Wagner-Garay v. Fort Wayne Community Schools, 255 F.Supp.2d 915, 922 (N.D. Ind. 2003) ("However, the appropriate standard for analyzing a substantive due process claim depends on whether 'legislation or a specific act of a governmental officer is at issue.'")(quoting Dunn v. Fairfield Community High School Dist. # 225, 158 F.3d 962, 965 (7th Cir. 1998)).   The parole board is an executive branch agency.  See Apprendi v. New Jersey, 530 U.S. 466, 549 (2000)(describing parole board officials as executive branch officials).   The standard of review for a substantive due process challenge to executive branch action requires that the aggrieved person establish that the executive action shocks the court's conscience.  See, e.g., Hunterson v. DiSabato, 308 F.3d 236, 247 n. 10 (3d Cir. 2002) (wherein the Court of Appeals observed that "we have frequently employed the 'shocks the conscience' standard when considering a claim that an executive action amounted to a substantive due process violation.");  Hawkins v. Freeman, 195 F.3d 732 (4th Cir. 1999)(applying shock the conscience standard to an alleged error in the parole process); Benson v. Martin, 8 Fed.Appx. 927, 930 (10th Cir. 2001) (explaining it is a habeas petitioner's burden to establish that the challenged

---

[4]  This court acknowledges that even though "the vitality of Block is questionable, it must be followed until overturned. See Jubilee v. Horn, No. 97-1755, slip op. at 1 (3d Cir. Mar.26, 1998) (unpublished per curiam decision) ('[N]ot only do courts of appeals in other circuits disagree with Block, but more recent decisions by this Court suggest that Block may be obsolete.')."  Rauso v. Vaughn, No. Civ. 98-6312, 1999 WL 111474, *1 (E.D. Pa. March 2, 1999).

action shocks the conscience).

Admittedly, the "shock the conscience" test is less than precise.  However, in giving content to this test, the Supreme Court has explained that conduct that is "most likely to rise to the conscience-shocking level is 'conduct intended to injure in some way unjustifiable by any government interest.'"  Chavez v. Martinez, 538 U.S. 760, 775 (2003) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998)).

Petitioner's first ground of complaint is that the Board found that he had not completed the sex offenders class when in fact he says he has completed it.  Dkt. [3] at 5.  Petitioner fails to show that requiring him to successfully complete a sex offenders treatment program or even to repeat the program, if, in fact, he completed it one time already, is conscience shocking or that such a requirement constitutes behavior that is intended to injure Petitioner in a way that is unjustifiable by any government interest.

While Petitioner contends that he did complete the class and he has a "life line," which is a summary of his life, that he was required to do upon the alleged completion of the sex offenders treatment group, in another submission, Petitioner himself indicates that he has not successfully completed the sex offenders treatment program as he states that Melissa L. McMahon "will not put an ending date on the sex offenders treatment program[.]"  Dkt. [15] at 2, ¶ 2.  Hence, it appears that Petitioner has not successfully completed the sex offenders treatment program, at least not to the satisfaction of Ms. Melissa L. McMahon, who is the "psychological services specialist [who] runs the program for sex offenders[.]" Dkt. [13] at 2.   It may well be that in her estimation Petitioner has not received the complete benefit from the program and he needs to continue treatment.  Such an opinion does not violate Petitioner's Constitutional rights.  In any event, the

Board was fully within its discretion to conclude that Petitioner has not successfully completed a sex offenders program when Ms. McMahon has not put an ending date on Petitioner's sex offender treatment program.

Even if Petitioner had completed the sex offenders program, it would still not violate Petitioner's substantive due process rights for the Board to conclude, in the exercise of its discretion, that Petitioner could benefit from repeating the treatment program because in its estimation, Petitioner needs to repeat the program in order to be a safer risk should he be released on parole. See Banks v. Pennsylvania Bd. of Probation and Parole, 2004 WL 906296, at *4 (E. D. Pa. April 28, 2004) ("[T]he Board's decision that Petitioner may require continued participation in a prescriptive program does not constitute an arbitrary or capricious decision.").   Even if the Board is erroneous in this conclusion, such would not violate any of Petitioner's rights.  Bishop v. Wood, 426 U.S. 341, 350 (1976)("The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect . . . decisions"), overruling on other grounds as recognized in, Whims v. Harbaugh, 139 F.3d 897 (4th Cir. 1998) (Table, Text in Westlaw); Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994) (applying rule of Bishop v. Wood in a prisoner case); Palmigiano v. Mullen, 491 F.2d 978, 980 (1st Cir. 1974) ("There is no federally-protected right to a particular classification nor even to an error-free decision by the state authorities. 'The Constitution does not assure uniformity of decisions or immunity from merely erroneous action, whether by the courts or the executive agencies of a state.'")(quoting Snowden v. Hughes, 321 U.S. 1, 15 (1944) (Frankfurter, J., concurring)); Tansy v. Mondragon, 52 F.3d 338 (Table), 1995 WL 216926, *5 (10th Cir. 1995)("Even assuming that some of the allegations against Mr. Tansy were inaccurate, this does not establish a factual dispute as to whether he was deprived of substantive due

process.").  That the Respondents committed a factual error in the course of their determining whether Petitioner should be paroled, (assuming that they did, in fact, commit an error) simply does not shock this court's conscience.  That this is the case should not be surprising.  If it does not offend the constitution that an innocent person is erroneously convicted of a crime, and made to suffer imprisonment, and, the Supreme Court has determined that it does not so offend,[5] then *a fortiori*, that a convicted prisoner is "erroneously" denied parole and  made to continue to serve his lawful sentence, does not violate the constitution merely because the determination is erroneous.  Accordingly, Petitioner has failed to carry his burden to show that the Board violated his substantive due process rights in denying him parole by requiring him to complete further sexual offenders treatment programming.

Petitioner raises as his second ground for relief that the Board is requiring him to participate in and complete additional institutional programs but that he has participated in many institutional programs.  The reasoning above with respect to the Board's requiring him to complete further sexual offenders treatment programming applies with even greater force to this second ground.  Unlike his first claim, where Petitioner contends he completed the sexual offenders treatment program, here, Petitioner does not claim that he has completed all treatment programs offered and, hence, his claim boils down to a contention that "I have done sufficient programming and the Board's conclusion that I need further programing is wrong."  This disagreement between what Petitioner deems he needs in terms of programming and what the Board deems he needs in terms of programing simply does not shock the court's conscience.   Petitioner has failed to

---

[5] See Herrera v. Collins, 506 U.S. 390, 400 (1993)("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief.").  See also id. at 404 ("a claim of 'actual innocence' is not itself a constitutional claim").

establish that the Board's requirement that he undergo more programing amounts to arbitrary or capricious behavior.  Accordingly, this issue does not merit relief.

Petitioner's third ground is his complaint that he was told DOC policy forbids him from looking at magazines containing pictures of nude woman and no such policy exists.  It is not clear to this court that this claim is even cognizable here.  The Board's most recent decision does not reference magazines or anything of that nature and Petitioner does not explain how this "fact" of not permitting him to view magazines of nude women impacts the Board's decision, if at all. Taking the view of the habeas petition most favorable to Petitioner, it may well be that the Board's consideration of the DOC's negative recommendation for parole is implicated by this particular claim.  Assuming that this is so, that the DOC made a negative recommendation to the Board based on Petitioner's desire to acquire magazines containing nude women, again, such does not shock this court's conscience nor is it arbitrary or capricious.  It appears to this court to be quite rational to require sex offenders to refrain from engaging in the acquisition and/or retention of magazines portraying women in the nude.  This is so even if there is not a DOC policy against such behavior as Petitioner contends.   However, contrary to Petitioner, it appears that there is a DOC policy against such.  See DC-ADM 803.VI.A. 11 ("Every inmate is prohibited from receiving nude photographs.").[6]  Such a prohibition on possession by convicted sex offenders of nude photographs, which may be contained in magazines is not conscience shocking.   Accordingly, this

---

[6]  The DOC policy is available at the following website, of which this Court takes judicial notice.

http://www.cor.state.pa.us/standards/lib/standards/DC-ADM_803_Inmate_Mail_and_Incoming_Publications1.pdf

issue does not merit relief.

Lastly, Petitioner complains that when he receives his decisions from the Board denying him parole, they are not accompanied by an appeal notice or appeal form.  There is no violation here because Petitioner has no right to file an appeal from the Parole Board's denial of parole (as opposed to the Board's revocation of parole).  Johnson v. Pennsylvania Bd. of Probation and Parole, 2003 WL 22845415, at *3 (E.D.Pa. Nov. 26, 2003)("counsel correctly pointed out that a denial of parole is not subject to administrative appeal"), aff'd, 163 Fed.Appx. 159 (3d Cir. 2006) ; Rodgers v. Parole Agent Sci-Frackville, Wech, 916 F.Supp. 474 (E.D.Pa. 1996).  Accordingly, this issue does not merit relief.

For the foregoing reasons, the habeas petition should be denied.

**Certificate of Appealability**

The Antiterrorism Act included several major reforms to the federal habeas corpus laws. Section 102 of the Antiterrorism Act (28 U.S.C. § 2253(c) (as amended)) codifies standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  Amended Section 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  Petitioner has not made a showing that he has been denied any of his constitutional rights.  Accordingly, a certificate of appealability should be denied.

CONCLUSION

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of

the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any

appellate rights.

Respectfully submitted,

/s/  *Amy Reynolds Hay*
United States Magistrate Judge

Dated:  23 October, 2007

cc:      The Honorable Terrence F. McVerry
         United States District Judge

         Robert Walls, BJ-9898
         SRCF Mercer
         801 Butler Pike
         Mercer, PA 16137